Church, Ch. J.
The statute of limitations is not available to the defendants in this court. The question was not raised at the trial, and no claim made or exception taken in respect to it. 'It is now sought to be raised upon the fact appearing upon the papers that the notes were given more than six *479 years prior to the commencement of the action, and the only evidence of the time when the action was commenced is the date of the summons and jurat to the complaint. It is a well settled rule that an objection which if taken might have been obviated, cannot be urged on appeal, but it is claimed that this defence is not of that character. It is not enough that the objection appears prima facie well taken. It must be conclusive. It must appear that there is no possible answer which can be made to it. We have no legal means of determining if the question had been raised that the plaintiffs might not have proved a renewal of the notes, or waiver of the statute in writing or by payments. By omitting to make the objection the plaintiffs had a right to regard it as waived. The defendants had an opportunity on a motion for nonsuit, and at the close of the trial and by a request to charge, to raise the question, and it would be entirely unprecedented to permit the point to be made here for the first time.
It is urged that the liability of the defendants is discharged by the change made by the company on the twelfth of August, in the manner of doing business with the dealers of the company. That change increased the rate of premiums on an average, ten per cent, and permitted dealers to withdraw this sum, and five per cent in addition in cash in lieu of participating in the profits and receiving scrip dividends therefor as provided by the terms of the charter. These scrip dividends represented a fund which was liable to be applied upon the debts of the company, and which must with all other assets be exhausted, before resort could be had by the company to the “ security notes ” of which those in suit were a part. The “ security notes,” as they are called, were given by dealers, to represent advance premiums, and when the persons giving them had paid an amount of premiums equal to the notes for policies issued by the company, they were surrendered by the company, if in their possession, and if not they were paid and delivered to the makers, by the company ; and all premiums paid by the makers, as between them and the company operated pro tanto to reduce the amount of *480 the notes, and the balance not thus absorbed were liable for the losses and liabilities of the company after the cash capital and other resources of the company were exhausted, and the inducement for giving these notes was the participation in the profits of the company provided by the charter. The learned counsel for the defendants insists that the makers of these notes occupied the position of sureties to the company, and that any change in the mode of doing business by which any assets were or might be diminished, discharged them from liability. It does not appear whether the change was or not beneficial to the company as a business arrangement. It does appear that the bulk of the business, after the arrangement, was done by paying net premiums, and that this yielded rather more than the old mode; but a portion of the dealers paid the increased rate and received the fifteen per cent in return, which included five per cent in lieu of a scrip dividend. I am unable to justify this defence upon any legal principle. It is not claimed but that the company had the legal power to make the change in the mode of doing business. There was no implied agreement with the defendants that the company would not exercise the power. On the contrary, the contract would be deemed made subject to the right to exercise it. Again, the defendants were not sureties to the company, but to its creditors for the company, and the wrongful acts of the company would not discharge them. The scrip dividends were obligations against the company only in the event that the fund which they represented was not needed to pay losses, etc. If needed, the fund could be used, and the scrip became of no value. If the company paid out the fund or any portion of it without legal authority, it could be recovered back by the receiver, but would not affect the. liability upon the security notes, except that the amount thus diverted, as well as all assets, 'must be first exhausted.
It is said the creditors assented, by receiving the five per cent from this fund. It does not appear that any creditor received any portion of it. A portion of the dealers, in clud *481 ing some who had given security notes, availed themselves of the new arrangement, but it does not appear that any of those are creditors. All that the defendants could in any event claim, assuming the payment of five per cent to have been unauthorized and illegal, would be to have the amount thus wrongfully abstracted regarded as assets which must first be exhausted; and there is no evidence showing the amount, or that it would make any material difference with the financial position of the company; so that in any view of the transaction, whether the change is regarded as lawfully effected or not, it constitutes no defence to these notes.
The question was raised whether the evidence was sufficient to establish that all the other resources of the company had been exhausted. It appeared in evidence, and was not controverted, that the adjusted and fixed liabilities of the company amounted to nearly $3,000,000, that the available assets in possession were about half a million, and demands embraced in the Alabama claims (so called) of about $1,000,000; and if these were all realized the company would still be unable to pay fifty cents on a dollar. The only question is, what construction should be put upon the word exhausted / and I am inclined to think that it does not require a collection and sale and an actual application of all the other assets before resort may be had to the security notes. When it clearly appears that the other resources of the company are insufficient to pay its liabilities, such resources may, and I think should, be regarded as exhausted within the meaning of the charter. We must presume that the word was used in that sense. An actual application of every other asset would be highly inconvenient if not impracticable, consistently with the rights of those interested. It is unnecessary to notice the other points, as we concur with the opinion of the court below.
The judgment must be affirmed.
All concur.
Judgment affirmed.